# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF SOUTH CAROLINA

Larry Golden,

   Plaintiff,

    V.

Apple Inc.; Samsung Electronics USA;
LG Electronics USA, Inc.; Qualcomm Inc.;
Motorola Solutions, Inc.; Panasonic
Corporation; AT&T Inc.; Verizon
Corporation Service Group; Sprint
Corporation; T-Mobile USA Inc.;
Ford Global Technologies LLC;
Fairway Ford Lincoln of Greenville;
General Motors Company; Kevin Whitaker
Chevrolet; FCA US LLC; Big 'O' Dodge
Chrysler Jeep Ram

   Defendants.

CASE NO: <u>6:20-cv-04353-JD</u>

**JURY TRIAL DEMANDED**

February 11, 2021

RECEIVED
USDC CLERK, GREENVILLE, SC
2021 FEB 11  PM 2:51

## PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE McDONALD'S

## REPORT AND RECOMMENDATIONS

   Not once in the one year and a half since Plaintiff filed his original complaint on
September 11, 2019, has the Magistrate Judge (MJ) McDonald identified what makes Plaintiff's
complaint(s) "frivolous". The MJ is quick to say Plaintiff's complaint(s) should be dismissed for
"lack of enough factual allegations" or that Plaintiff's "statements are conclusory" without ever

identifying exactly where there's not enough factual allegations or what statements are conclusory.

The MJ made an attempt to identify "frivolousness" when he stated Plaintiff's complaint is duplicative of another complaint Plaintiff has filed in another Court. When that question was put before the Circuit Court, the MJ's opinion was overturned. Thereby, the MJ's attempt to dismiss Plaintiff's case on the *frivolous* claim that Plaintiff's case should be dismissed as being "duplicative" ending as a waste of this Court and Plaintiff's time and money.

The MJ is making another attempt at having a related case of Antitrust Law Violations dismissed by making the *frivolous* claim that patent infringement and antitrust law violations are the same. The MJ states in the Antitrust case that Plaintiff is to proceed forward in his pleadings of antitrust violations as an individual; but recommends dismissal because the case is a patent infringement case. That's makes the MJ's report and recommendations *frivolous* on its face.

The MJ's new strategy to dismiss Plaintiff's cases(s) is to prejudice Plaintiff's case by directing attention to the number of times Plaintiff has had to file in this Court, without mentioning it's all because of the *frivolous* reports and recommendations the MJ keep making.

Plaintiff believes the MJ's new strategy involves pending one African-American (District Judge Dawson assigned to this case) against another African-American (Plaintiff in this case). This, a three-hundred-year-old strategy, was written in a letter to the slave owners by Willie Lynch in the 1712.

The Willie Lynch Letter and *The Making of a Slave* is a speech delivered by Willie Lynch to an audience on the bank of the James River in Virginia in 1712 regarding control of slaves within the colony. The speaker, William Lynch, is said to have been a slave owner in the West Indies, and was summoned to Virginia in 1712; in part due to several slave revolts in the

area prior to his visit, and more so because of his reputation of being an authoritarian and strict

slave master. The Willie Lynch Letter is an account of a short speech given by Willie Lynch, in

which he tells other slave owners that he has discovered the "secret" to controlling enslaved

Africans by setting them against one another:

> I am not here to enumerate your problems; I am here to introduce you to a method of solving them. In my bag here, I HAVE A FULL PROOF METHOD FOR CONTROLLING YOUR BLACK SLAVES. I guarantee every one of you that, if installed correctly, IT WILL CONTROL THE SLAVES FOR AT LEAST 300 HUNDRED YEARS.
>
> My method is simple. Any member of your family or your overseer can use it. I HAVE OUTLINED A NUMBER OF DIFFERENCES AMONG THE SLAVES; AND I TAKE THESE DIFFERENCES AND MAKE THEM BIGGER. I USE FEAR, DISTRUST AND ENVY FOR CONTROL PURPOSES.
>
> These methods have worked on my modest plantation in the West Indies and it will work throughout the South. Take this simple little list of differences and think about them. On top of my list is "AGE," but it's there only because it starts with an "a." The second is "COLOR" or shade. There is INTELLIGENCE, SIZE, SEX, SIZES OF PLANTATIONS, STATUS on plantations, ATTITUDE of owners, whether the slaves live in the valley, on a hill, East, West, North, South, have fine hair, course hair, or is tall or short.
>
> Now that you have a list of differences, I shall give you an outline of action, but before that, I shall assure you that DISTRUST IS STRONGER THAN TRUST AND ENVY STRONGER THAN ADULATION, RESPECT OR ADMIRATION. The Black slaves after receiving this indoctrination shall carry on and will become self-refueling and self-generating for HUNDREDS of years, maybe THOUSANDS. Don't forget, you must pitch the OLD Black male vs. the YOUNG Black male, and the YOUNG Black male against the OLD Black male.
>
> You must use the DARK skin slaves vs. the LIGHT skin slaves, and the LIGHT skin slaves vs. the DARK skin slaves. You must use the FEMALE vs. the MALE, and the MALE vs. the FEMALE. You must also have White servants and overseers [who] distrust all Blacks.
>
> But it is NECESSARY THAT YOUR SLAVES TRUST AND DEPEND ON US. THEY MUST LOVE, RESPECT AND TRUST ONLY US. Gentlemen, these kits are your keys to control. Use them. Have your wives and children use them, never miss an opportunity. IF USED INTENSELY FOR ONE YEAR, THE SLAVES THEMSELVES WILL REMAIN PERPETUALLY DISTRUSTFUL. Thank you, gentlemen."

Plaintiff is asking the District Court Judge assigned to this case to take into consideration

the long history of African-Americans who were exploited for their ideas by whites.

# THE GOVERNMENT'S LONG HISTORY OF EXPLOITING AFRICAN-AMERICANS (BLACKS)

Just because the Government has a long history of exploiting Black people (African-Americans) by taking their intellectual property ideas; using them with and for the benefit of the public; without paying just compensation, does not make it right. Included in the history is the "blind eye" behavior of this Court. If this Court decides not to proceed forward with this case, the Court is literally joining the Government in magnifying a Judicial culture that, "there are laws that protects citizens from a Government taking of their property without paying just compensation; they just don't apply to African-Americans".

African-Americans are still being treated as less than equal because of the Supreme Court rule in the 1857 *Dred Scott* decision that "black people weren't U.S. citizens". This ruling prevented Blacks from being issued patents and being compensated for their inventive ideas.

After 400 years of slavery, 167 years since the *Dred Scott* decision, and this Nation's attitude that only one African-American can sit on the U.S. Supreme Court at a time, it's time for this Court to make changes to protect the life, liberty, and property of all citizens.

When slavery ended in the United States, freedom still eluded African-Americans who were contending with the repressive set of laws known as the "black codes". Widely enacted throughout the South following the Civil War—a period called Reconstruction—these laws both limited the rights of Black people and exploited them as a labor source. Following are a list of African-Americans who were exploited as a labor source and who had their intellectual property (ideas) "taken"; used with the public; and, without just compensation. The list includes the Plaintiff, Larry Golden:

**Benjamin Thornton Montgomery** (1819–1877) was an African-American inventor. Montgomery eventually applied for a patent for his design of a

4

steam-operated propeller to provide propulsion to boats in shallow water. On June 10, 1858, on the basis that Ben, as a slave, was not a citizen of the United States, and thus could not apply for a patent in his name, he was denied this patent application in a ruling by the United States Attorney General's office. It ruled that neither slaves nor their owners could receive patents on inventions devised by slaves. This Court allowed it to happen and did nothing about it. The steam-operated propeller was used for decades by the Government.

**Katherine Johnson**, an African-American mathematician for NASA and its predecessor agency, passed away on 24 February, 2020 at age 101. She and women like her worked unseen for decades to ensure America's success in the space race. The 2016 movie Hidden Figures finally brought her story to light. The recognition of Katherine's contributions to aeronautics and to America's ventures into space is well deserved, as she and her African American colleagues did vital work while facing Jim Crow barriers in nearly every aspect of their lives. In 1952, through family, Katherine learned of and seized an opportunity to apply her mathematical skills at the Langley Aeronautical Laboratory, a research center of the National Advisory Committee for Aeronautics (NACA, NASA's predecessor). During World War II and the ensuing Cold War, NACA needed the skills of female mathematicians ("human computers") to support the work of their engineers. With executive orders urging desegregation, the all-Black West Area computing group came onboard, joining the all-White East Area computing group in providing that mathematical power. At that time, women in government experienced economic inequality—in title, salary, and limited opportunities for promotion. Meanwhile, Black Americans in the segregated South faced educational, social, and economic inequities. And yet, on the strength of her mathematical abilities, Katherine was considered an equal within the community of engineers and scientists with whom she worked. In 2015 Katherine was awarded the Presidential Medal of Freedom by President Obama. In 2016 she received a Silver Snoopy Award from astronaut Leland Melvin and a NASA Group Achievement Award. In November 2019, by way of bipartisan legislation, Johnson and other hidden figures of NASA were honored with Congressional Gold Medals. Katherine Johnson was rightly recognized for her "work", but should have been compensated by the Government for her "worth".

**Dr. Gladys Mae West** (born 1930) is an African-American inventor and mathematician known for her contributions to the mathematical modeling of the shape of the Earth, and her work on the development of the satellite geodesy models that were eventually incorporated into the Global Positioning System (GPS). She is recognized as the inventor of the Global Positioning System (GPS). Dr. West is one of the reasons why you can receive driving directions from your phone or tag a photo location on Instagram. But less ubiquitous is the knowledge that GPS got its start in the mind of an Air Force mathematician named Gladys West. Dr. West was hired as a mathematician at the Naval Proving Ground in Dahlgren, VA, (now called the Naval Surface Warfare Center), where she analyzed satellite data. She was one of only four African-American employees at the time.  Dr. West used the information from Seasat and other satellites to refine over the years an increasingly detailed and accurate mathematical model of the actual shape of the earth – called a "geoid". This computational modeling would prove essential to modern

5

GPS, as the technology relies on this mathematical model in order to determine the position of a receiver.

**Henry T. Sampson** (April 22, 1934 – June 4, 2015) was an African-American inventor, best known for creating the world's very first cell phone in 1971. Information about him on Wikipedia states: "On July 6, 1971, he was awarded a patent, with George H. Miley, for a gamma-electrical cell, a device that produces a high voltage from radiation sources, primarily gamma radiation, with proposed goals of generating auxiliary power from the shielding of a nuclear reactor. "On April 3, 1973, using the patented technology they created, Motorola engineer Marty Cooper placed the first public call from a cell phone, a real handheld portable cell phone. On April 3, 1973 Motorola publicly demonstrated the world's first working prototype portable cellular system and phone, called DynaTAC, in New York City. On September 21, 1983, after 10 years and more than a US$100 million investment, Motorola received type acceptance for the world's first portable cellular phone system and world's first handheld cell phone, the DynaTAC 8000X. F.C.C. granted a developmental license for the Baltimore-Washington, D.C., area in 1977. FCC approved the DynaTAC 8000X phone, the world's first commercial portable cell phone. A white Motorola engineer name Martin Cooper made the first public cellphone call on April 3, 1973 and is recognized as the first to invent the cell phone.

**Valerie Thomas** was born in May 1943 in Maryland is an accomplished African-American scientist and inventor who patented the illusion transmitter and contributed greatly to NASA research. Thomas accepted a position as a data analyst at NASA in 1964 conducting large-scale experiments and developing real-time computer data systems. In the 1970s, Thomas managed the development of the image-processing systems for LANDSAT, the first satellite to send images from space. In 1977, Thomas began experimenting on an illusion transmitter. On October 21, 1980, she was granted patent number 4,229,761 for her invention. The device produces optical illusion images via two concave mirrors. NASA adopted the technology and is also still used in surgery and in the production of television and video screens. This brilliant innovation placed Valerie Thomas among the most remarkable African-American inventors of the 20th century. Thomas held various positions at NASA including Project Manager of the Space Physics Analysis Network and Associate Data Operations Officer. She contributed to the development of computer programs designs used for the research on Halley's Comet, the ozone layer, and satellite technology. NASA awarded Thomas with the Goddard Space Flight Center Award of Merit and NASA Equal Opportunity Medal, among others. She served as the Space Physics Analysis Network (SPAN) project manager from 1986-1990 during a period when SPAN underwent a major reconfiguration and grew from a scientific network with about 100 computer nodes to one directly connecting about 2,700 computer nodes worldwide. In 1990 SPAN became a major part of NASA's science networking and today's Internet. Dr. Valerie Thomas continued working at NASA until her retirement in 1995. Valerie Thomas is rightly recognized for her "work", but should have been compensated by the Government for her "worth".

**Lonnie George Johnson** (born October 6, 1949) is an African-American inventor, aerospace engineer, and entrepreneur, whose work history includes a U.S. Air Force term of service and a twelve-year stint at NASA, including the Jet Propulsion Laboratory. Johnson joins the U.S. Air Force, becoming an important member of the government scientific establishment. He was assigned to the Strategic Air Command, where he helped develop the stealth bomber program. Johnson moved on to NASA's Jet Propulsion Laboratory in 1979, working as a system engineer for the Galileo mission to Jupiter and the Cassini mission to Saturn, before returning to the Air Force in 1982. He has since been developing the Johnson Thermoelectric Energy Converter (JTEC), an engine that converts heat directly into electricity, which Johnson's sees as the path to low-cost solar power. With the creation of the Johnson Thermoelectric Energy Converter (JTEC), the engineer aimed to develop an advanced heat engine that could convert solar energy into electricity with twice the efficiency of existing methods. If he manages to perfect the JTEC, Johnson will carve out a much greater place in history as one of the seminal figures of the ongoing green technology revolution. Paul Werbos of the National Science Foundation summed up the immense importance of Johnson's work: "This is a whole new family of technology. ... [I]t's like discovering a new continent. You don't know what's there, but you sure want to explore it to find out. ... [i]t has a darn good chance of being the best thing on Earth." For his work he should have already been paid by the Government "tens of millions of dollars.

**Betty Wright Harris**, born on 29 July 1940, is an African-American chemist. She is known for her work on the chemistry of explosives completed at Los Alamos National Laboratory. She patented a spot test for detecting 1,3,5-triamino-2,4,6-trinitrobenzene (TATB) in the field, which is used by the Federal Department of Homeland Security to screen for nitroaromatic explosives. Dr. Harris worked as a research chemist developing expertise in a variety of areas within explosives and nuclear weapons, hazardous waste treatment, environmental restoration of facilities contaminated with energetic materials such as propellants, gun propellants, and explosives, becoming an expert in the chemistry of explosives. Dr. Harris obtained U.S. patent number 4,618,452 for her invention of the TATB spot test, which identifies explosives in a field environment. Dr. Harris retired from LANL in 2002 but continued work at the United States Department of Energy Office of Classification as a certified document reviewer. Dr. Harris held a "Q" clearance allowing her to see documents with Secret Restricted Data. Betty Wright Harris should have been compensated by the Government for her "worth".

**Dr. Mark Dean**, born on March 2, 1957, an African-American inventor, computer scientist and engineer. He's a Ph.D. from Stanford University and is featured in the National Hall of Inventors. He has more than 30 patents pending. He is a vice president with IBM. He is also the architect of the modern-day personal computer. Mark Dean helped develop a number of landmark technologies for IBM, including the color PC monitor and the first gigahertz chip. He holds three of the company's original nine patents on the computer that all PCs are based upon. He also invented the Industry Standard Architecture system bus with engineer Dennis Moeller, allowing for computer plug-ins such as disk drives and printers. Dr. Dean helped start a Digital Revolution that created

people like Microsoft's Bill Gates and Dell Computer's Michael Dell. Millions of jobs in information technology can be traced back directly to Dr. Dean. Although technically Dr. Dean can't be credited with creating the computer — Dr. Dean rightly deserves to take a bow for the machine we use today. The computer really wasn't practical for home or small business use until he came along, leading a team that developed the interior architecture (ISA systems bus) that enables multiple devices, such as modems and printers, to be connected to personal computers. In other words, because of Dr. Dean, the PC became a part of our daily lives. Dr. Dean is rightly recognized for her "work", but should have been compensated by the Government for her "worth".

  **Dr. Kizzmekia Corbett**, is an African-American woman from North Carolina who will go down in history for leading the effort to solve the COVID-19 pandemic. Dr. Corbitt is a research fellow and scientific lead at the National Institute of Health. "The very vaccine that's one of the two that has absolutely exquisite levels -- 94 to 95% efficacy against clinical disease and almost 100% efficacy against serious disease that are shown to be clearly safe -- that vaccine was actually developed in my institute's vaccine research center by a team of scientists led by Dr. Barney Graham and his close colleague, Dr. Kizzmekia Corbett, or Kizzy Corbett," Fauci told the forum. "I felt like it was necessary to be seen and to not be a hidden figure so to speak," Corbett said. "I felt that it was important to do that because the level of visibility that it would have to younger scientists and also to people of color who have often worked behind the scenes and essentially [who have] done the dirty work for these large efforts toward a vaccine." "So, the first thing you might want to say to my African American brothers and sisters is that the vaccine that you're going to be taking was developed by an African American woman," Fauci said. "And that is just a fact." Second to saving tens of thousands of lives, Dr. Corbitt should be recognize for more than her work, she should also be compensated for her contribution to restoring our Nation's economy.

  **Larry Golden,** born in 1956, is an African-American inventor who invented the communicating, monitoring, detecting, and controlling (CMDC) device. The generic name for at least one of the CMDC devices is "smartphone". Golden's inventions are the technical rational to each of three economic stimulus packages for restoring the Nation's economy after the 9/11 attacks that Golden shared with the highest members of the Bush administration, that include members of the Senate and members of Congress during the Bush administration. First, Golden's multi-sensor detection device is the technical rational in support of Golden "SafeRack" economic stimulus package which includes detection capability of at least that of chemical, biological, radiological and nuclear agents, explosives, and the detection of humans. The multi-sensor detection device can be placed in, on, upon or adjacent products targeted for monitoring, such as vehicles designed to transport cargo: FedEx vehicles, UPS vehicles, tractor trailers, vans, cargo ships, cargo planes, and vehicles transporting marine-time cargo containers. Second, Golden's stall, stop, and vehicle slowdown system is the technical rational in support of Golden "V-Tection" economic stimulus package which includes a remote and/or pre-programmed stall, stop, or vehicle slowdown system for at least that of automobiles, driverless vehicles, autonomous vehicles, manned and unmanned sea vehicles, manned and unmanned aerial vehicles, and manned and unmanned ground vehicles. Third,

Golden's communicating, monitoring, detecting, and controlling (CMDC) device is the technical rational in support of Golden "ATPG" economic stimulus package. ATPG is the acronym for *"anti-terrorism product grouping"*. All three packages are joined to form a network of networks that has CMDC devices integrated within the networks, carried by tens of millions of consumers to form a ubiquitous communicating, monitoring, detecting, and controlling environment. The CMDC device has a multi-sensor detection capability that is either in, on, upon or adjacent the CMDC device. The CMDC device has a lock, unlock, or disabling lock capability that is either in, on, upon or adjacent the CMDC device. The CMDC device has a vehicle operating systems capability that controls the vehicle's stall/slowdown; doors and windows lock/unlock; ignition start/stop; temperature on/off; and, the vehicles location and tracking data. For security the CMDC device has a biometric, i.e., fingerprint, facial, etc. capability for identifying authorized users. The CMDC device has a disabling locking capability for locking the device after several failed attempts to open the device. The CMDC device has a short-range, radio frequency (RF) near-field communication (NFC) capability for scanning any of the products listed under any of the stimulus packages mentioned above. Google: "Larry Golden CMDC – YouTube" to view documentary.

Intellectual Property (IP) theft involves robbing people or companies of their ideas, inventions, and creative expressions—known as "intellectual property"—which can include everything from trade secrets and proprietary products and parts to movies, music, and software. IP theft can result in serious economic damage, loss of competitive edge, and decreased business growth. In fact, the total theft of U.S. trade secrets accounts for anywhere from $180 billion to $540 billion per year, according to the Commission on the Theft of American Intellectual Property. The MJ is clearing the path so that his white acquaintances can rob Plaintiff's ideas without ever having to defend their actions in a Court of law.

IP theft impacting large, global enterprises tend to dominate the media headlines, while equally debilitating instances of IP theft affecting smaller companies and individual inventors (i.e., Plaintiff) who can't afford to defend their property against the large corporations or the Government, often go unreported. All told, intellectual property theft costs U.S. businesses billions of dollars a year and robs the nation of jobs and tax revenues.

On Writ of Certiorari to The United States Court of Appeals for the Federal Circuit [June 10, 2019], the Supreme Court of the United States in case no. 17–1594; *Return Mail, Inc., Petitioner v. United States Postal Service*, et al., stated the following:

> "[w]hen, for example, the Department of Homeland Security recently instituted a research initiative to equip cell phones with hazardous-materials sensors in order to mitigate the risk of terrorist attacks, it faced an infringement lawsuit that threatened to interfere with the project. *See Golden v. United States*, 129 Fed. Cl. 630 (2016)".

The Department of Homeland Security's Science & Technology Directorate; DHS/S&T; BAA07-10; *"Cell-All Ubiquitous Chemical and Biological Sensing"* is an initiative the Plaintiff filed an infringement lawsuit against because Plaintiff believes the development of the *Cell-All* device infringes Plaintiff's claimed invention covered in a patent. Plaintiff believes the DHS (government) conspired with the third-party contractors i.e., Apple, Samsung, and LG, to take Plaintiff's "intellectual property" without paying just compensation.

Before the DHS *Cell-All* solicitation was released in year 2007 for a cell phone equipped with hazardous-materials sensors, Plaintiff sent intellectual property subject matter of a hand-held scanner capable of CBRN-E detection, between the years 2003-2005, to the Office of the President (Bush); the Office of the Vice-President (Cheney); and, three U.S. Senators from the State of South Carolina (Holland, Graham, DeMint).

Plaintiff received response letters from the Office of the President (Bush); the Office of the Vice-President (Cheney); and, the three U.S. Senators from the State of South Carolina (Holland, Graham, DeMint), all stating the information was sent over to the Department of Homeland Security and that Plaintiff should contact the department directly. The response letters are proof the DHS was in possession of Plaintiff's intellectual property subject matter of a hand-held scanner capable of CBRN-E detection, four years before the Cell-*All* solicitation was released in year 2007.

In January, 2008, Plaintiff received via email, an invitation to visit the DHS to discuss

with the DHS/S&T Program Manager Edward Turner, Plaintiff's multi-sensor detection devices

for maritime cargo containers and Plaintiff's hand-held scanner capable of CBRN-E detection. A

read-ahead document was sent ahead that covered the Plaintiff's claimed inventions. Plaintiff

and the Plaintiff's lead engineer traveled to DHS where we discussed at least that of a hand-held

scanner capable of CBRN-E detection. The read-ahead document and the meeting held with the

DHS/S&T Program Manager, Edward Turner, is proof the DHS was in possession of Plaintiff's

intellectual property subject matter of a hand-held scanner capable of CBRN-E detection before

the award was made to the third-party contractors i.e., Apple, Samsung, and LG in mid-2008.

Plaintiff submitted a proposal in response to the Department of Homeland Security's

Science & Technology Directorate; DHS/S&T; BAA07-10; *"Cell-All Ubiquitous Chemical and*

*Biological Sensing"* solicitation for a cell phone equipped with hazardous-materials sensors in

order to mitigate the risk of terrorist attacks for the Program Manager, Stephen Dennis review.

Plaintiff entered into email correspondence with the Program Manager, Stephen Dennis where

the Plaintiff was asked to send additional information about the *Cell-All* proposal. The proposal

and the follow-up email correspondence are proof the DHS *Cell-All* Program Manager, Stephen

Dennis and the DHS were in possession of Plaintiff's intellectual property subject matter of a

hand-held scanner capable of CBRN-E detection before the award was made to the third-party

contractors i.e., Apple, Samsung, and LG in mid-2008.

The Department of Homeland Security (DHS) and the third-party contractors i.e., Apple,

Samsung, and LG conspired to avoid being sued for patent infringement by the Plaintiff. When

DHS and Apple, Samsung, and LG entered into contracts for the development and

commercialization of the *Cell-All* device, Apple, Samsung, and LG avoided being sued in

District Court because as third-party government contractors, an action of infringement could only be brought against the DHS (government). While under contract for the Government, it was useless to bring an action against the Government because under 28 U.S.C. § 1498(a), if the third-party contractors i.e., Apple, Samsung, and LG "makes at least one part of the process abroad, there's no infringement" See *Zoltek v. United States* (2006). [Overturned in 2012]

Upon information and belief, the Government deliberately and intentionally entered into a contract with the CEO of Apple, to steal the ideas of the Plaintiff. Steve Jobs who famously said in 1996: "Picasso had a saying – 'good artists' copy; great artists steal' -- and we have always been shameless about stealing great ideas." Jobs openly admitted that he has no shame when it comes to stealing someone's great idea. The Government entered into a contract with Jobs, and it was implied upon Jobs to steal the Plaintiff's great ideas.

Each time the Plaintiff is allowed to file an amended complaint because the MJ is claiming the Plaintiff does not have enough factual allegations, the Plaintiff submits more evidence to prove his case. This time is no different. Plaintiff has a witness to verify everything Plaintiff has plead in his complaint by submitting a Declaration or Written Witness Testimony.

The witness will describe the collaborative agreement between ATPG Technologies LLC and Enabling Technologies and Innovation, Inc. (ETI) for the development of a mobile device (Plaintiff's CMDC device; Defendants' smartphone device) that interconnect to maritime cargo containers for tracking, and, interconnects to monitoring devices for the detection of chemical and biological agents.

The witness will also describe the work he and his team performed on developing, in years 2007-2010, proposals; charts; PowerPoint presentations; and, a presentation for a TV show (CD available). The witness will testify to selecting two HTC mobile devices for modifying into

prototypes; meetings held at ETI's office; prototype presentation in Greenville, SC held at the

Embassy Suits on Verdae; and, the trip the lead engineer (witness) and Plaintiff made in January,

2008 to the Department of Homeland Security (DHS) to meet with the Program Manager Ed

Turner to discuss Plaintiff's read-ahead document for the 2007 SafeCon solicitation; the 2007

*Cell-All* solicitation; and the then, upcoming T.R.U.S.T. solicitation.

If this Court grants the MJ's recommendations, nothing would have changed for African-

Americans who are exploited for their ideas; and for those few African-Americans who try to

prevent their property from being stolen through the judicial system.

## PLAINTIFF'S RIGHTS

### U.S. Constitution: 5th Amendment

No person shall… be deprived of life, liberty, or property, without due process of law; nor shall

private property be taken for public use, without just compensation.

### U.S. Constitution: 7th Amendment

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of

trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any

Court of the United States, than according to the rules of the common law.

### U.S. Constitution: 14th Amendment

**Section 1**. All persons born or naturalized in the United States, and subject to the jurisdiction

thereof, are citizens of the United States and of the state wherein they reside. No state shall make

or enforce any law which shall abridge the privileges or immunities of citizens of the United

States; nor shall any state deprive any person of life, liberty, or property, without due process of

law; nor deny to any person within its jurisdiction the equal protection of the laws.

**The United States Code:**

**(Actual Law Enacted by Congress as the Legal Evidence of the Law)**

**35 U.S. Code § 271 - Infringement of patent**

**(a)** Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

**(b)** Whoever actively induces infringement of a patent shall be liable as an infringer.

**(c)** Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

**(f)(1)** Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

**(f)(2)** Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside

14

of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

**35 U.S. Code § 282 - Presumption of validity**

**In General.** A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity.

### Federal Rules of Civil Procedure

**VII. Judgment: Rule 60— Relief from Judgment or Order. (b)** Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court

to entertain an independent action to relieve a party from a judgment, order, or proceeding. "Plaintiff's motion to reopen is governed by Rule 60(b) of the Federal Rules of Civil Procedure, which allows a court to "relieve a party . . . from a final judgment, order, or proceeding for" specific reasons. Rule 60(b) is an extraordinary remedy which sets aside the sanctity of [a] final judgment. *Compton v. Alton Steamship Co., Inc.*, 608 F.2d 96, 102 (4th Cir. 1979) (citation and internal quotation marks omitted)".

**U.S. District Court for the District of South Carolina:**

**Information on Representing Yourself in a Civil Action (Non-Prisoner) Rev. Dec. 1, 2020**

**Notice to Pro Se Parties**; "[w]henever a civil case is brought by a pro se party, the judges [added emphasis] of this court outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case" See *Roseboro v. Garrison,* 528 F.2d 309, 310 (4 Cir. 1975).

## IMPROPERLY INVALIDATING PATENTS

Plaintiff patents covers CBRNE detection devices to save lives; locking mechanisms to protect lives; stall, stop, and vehicle slowdown systems to save and protect lives; and a communicating, monitoring, detecting, and controlling (CMDC) device for grouping all of the products listed in the product grouping categories. Seventeen years ago, Plaintiff filed his first disclosure document for the above-named inventions on November 26, 2004. The MJ states Plaintiff's patents are frivolous because they are to fantastic and unbelievable:

> "Upon review, however, the plaintiff has not cured the frivolousness of his allegations. In reviewing a complaint for frivolousness or malice, the Court looks to see whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. *Harley v. United States*, 349 F. Supp. 2d 980, 981 (M.D.N.C. 2004) (citing *Neitzke v. Williams,* 490 U.S. 319 (1989)); see also *Feurtado v. McNair*, No. 3:05-cv-1933-SB, 2006 WL 1663792, at

*2 (D.S.C. Jun. 15, 2006) (noting that frivolousness encompasses inarguable legal conclusions and fanciful factual allegations), aff'd, 227 F. App'x 303 (4th Cir. 2007), petition for cert. dismissed, 553 U.S. 1029 (2008)."

When a Judge states that a claim for alleged patent infringement is "frivolous" the Judge has declared that the Plaintiff's patent(s) are "frivolous"; "raises an indisputably meritless legal theory"; "is founded upon clearly baseless factual contentions"; "fantastic or delusional scenarios"; "encompasses inarguable legal conclusions"; and, "fanciful factual allegations". The case is "frivolous" only when the asserted patent(s) entered in the case has expired. None of the patents asserted in this case(s) has expired or have been ruled to be invalid. Patents are issued with the "presumption of validity" **35 U.S. Code § 282.**

This Court has opt to believe or has predetermined it was the Defendants who termed the original language to describe the various processes of the mobile device, when it was the Plaintiff who originally termed the claim language for the mobile device. It is Plaintiff's argument that his claimed invention of a CMDC device antedates that of the Defendant's mobile devices. Therefore, this Court erred when they said it was the Plaintiff who is parroting the language of the Defendants in describing the alleged infringing devices.

The Defendants are liable in both scenarios. If the Defendants parrot Plaintiff's claim language, it is called a "2131 Anticipation violation, because all the claim language is covered in Plaintiff's patent that antedates the language used by the Defendants to describe their mobile device, "literal infringement". If the Plaintiff is parroting the Defendants language, he is demonstrating that each and every element recited in a claim has identical correspondence in the allegedly infringing device or process of the Defendants, "literal infringement".

There are basically two ways a Defendant (not the Judge) can prove non-infringement: The first, is to prove that literal infringement (the alleged infringing device or product does not

read on every limitation of the patent claim) does not exist; or, prove that there's no infringement under the "doctrine of equivalents", which means the alleged infringing device or product infringes because it performs substantially the same function in substantially the same way to obtain the same result. Both are decided by a jury at the trial stage, not by a Magistrate Judge at the pleading stage.

According to the "United States District Court District of South Carolina" if the pro se plaintiff fail to procedurally state a claim, it is the responsibility of "the Judges of this court [to] outline proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case" See *Roseboro v. Garrison*, 528 F.2d 309, 310 (4 Cir. 1975)". As stated above, it is NOT within the Magistrate Judge authority to invalidate the patents of the pro se plaintiff's alleged infringement claim at the pleading stage as "frivolous".

Second, is to prove that the pro se plaintiff's patent(s) that were issued with the presumption of validity, "(a)In General: '[a] patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity'." 35 U.S. Code § 282 - Presumption of validity; is invalid on the heightened standard of "clear and convincing evidence". In its decision in *Microsoft Corp. v. i4i Limited Partnership*, No. 10-290 (June 9, 2011) the Supreme Court "as juries will continue to be instructed on the heightened evidentiary burden faced by accused infringers… [t]he Court followed the "general rule that a common-law term comes with its common-law meaning." As a result, the Court held that absent indication in the statute otherwise, it was obligated to presume that Congress intended to

incorporate the heightened standard of proof when it enacted § 282." Therefore, it is NOT within the Magistrate Judge authority to invalidate the patents of the pro se plaintiff's alleged infringement claim at the pleading stage as "frivolous".

When a Judge recommends a case of alleged infringement be dismissed at the pleading stage, without a jury to determine if there's liability for infringement and/or if the patents are invalid, the Judge has overstepped his authority and assumed responsibilities granted a jury. "[J]uries regularly decided the following issues related to validity: (1) whether the invention was new; (2) whether the patentee was the actual inventor of the purported invention; (3) whether the invention was useful; (4) whether the specification accurately described the claimed invention; and (5) whether the specification enabled a person working in the relevant art to construct the item described in it." On Writ of Certiorari to the United States Court of Appeals for the Federal Circuit BRIEF FOR H. TOMÁS GÓMEZ-AROSTEGUI AND SEAN BOTTOMLEY AS AMICI CURIAE IN SUPPORT OF NEITHER PARTY. Henceforth, it is NOT within the Magistrate Judge authority to invalidate the patents of the pro se plaintiff's alleged infringement claim at the pleading stage as "frivolous".

Magistrate Judge (MJ) Kelvin McDonald is doing everything in his power to have all of Plaintiff's case(s) dismissed and kicked out of Court. Instead of "outlin[g] proper procedure so that the pro se party will not be deprived of a fair opportunity to present his or her case" See *Roseboro v. Garrison*, 528 F.2d 309, 310 (4 Cir. 1975) the MJ has gone so far as to recommend sanctions be placed on Plaintiff for exercising his right to bring an action against the companies, Plaintiff believe has infringed his patents and violated certain Antitrust Laws.

The MJ's duty in the related case *Golden v. Apple* et al; Case No. 6-20-cv-02270-JD; "Antitrust Law Violation" is to "outline proper procedure so that the pro se party will not be

deprived of a fair opportunity to present his or her case" See *Roseboro v. Garrison*, 528 F.2d 309, 310 (4 Cir. 1975), not to recommend dismissal and sanctions for filing a case.

## DISMISSAL "WITHOUT PREJUDICE"

This Complaint, as previously filed in the United States District Court for the District of South Carolina, *Golden v. Apple Inc.* et al, No. 6:19-cv-02557; and, appealed to the United States Court of Appeals for the Federal Circuit, *Golden v. Apple Inc.* et al, No. 20-1508; both dismissed under 12(b)(6) without prejudice.

In the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice. Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice. A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.

Plaintiff admits and understands, a judge can dismiss a claim with or without prejudice and that dismissal without prejudice is one where the plaintiff is allowed to amend the complaint or refile it. Plaintiff attempted to refiled the Complaint after correcting the flaws identified by the Circuit Court. The MJ ordered the Clerks to send the corrected Complaint and the Claim Charts back to Plaintiff as a punishment for Plaintiff attempted to refile the Complaint.

Magistrate Judge McDonald, "the undersigned recommends that the district court dismiss this action without prejudice and without issuance and service of process" *Golden v. Apple Inc.* et al, No. 6:19-cv-02557; District Judge Coggins, Jr., "this action is dismissed without prejudice and without issuance and service of process" *Golden v. Apple Inc.* et al, No. 6:19-cv-02557;

Chief Judge Prost and Circuit Judges Linn and Taranto, "we affirm the district court's dismissal without prejudice and without service of process..." *Golden v. Apple Inc.* et al, No. 20-1508.

## SCDC GUIDE FOR PRO SE LITIGANTS DOES NOT REQUIRE A 35 PAGE LIMIT FOR INITIAL OR AMENDED COMPLAINTS

The SCDC Guide, under the heading "Filing Other Documents", states: "[e]verything you send to the court (other than your initial documents) should have the case number on it... Original motions or memoranda (other than those that relate to discovery) must be filed with the court. Do not file any *motions or memoranda* that are longer than 35 pages unless you receive special permission from the court; most motions and memoranda should be considerably shorter." My complaint falls into the category of "initial documents".

Denying Plaintiff's complaint and ordering Plaintiff to follow a guideline that is blatantly against the guidelines established for Pro Se pleadings, created additional cost, labor, and a waste of valuable time for the Plaintiff. Does the Magistrate Judge hate African-Americans so much that he is willing to defy the law, and all the rules and regulations, just to be sure the Plaintiff's case never comes before a jury?

This matter was brought before the Court because of Plaintiff's alleged patent infringement claims against the Defendants, not because of various filings. The various filings are because this Court has erred in its adjudication on certain issues and for "lack of good judgement" on others.

This Court initially recommended dismissal of this case for "frivolousness". This Court converted the dismissal to "duplicative claim in another Court". This Court dismissed on "duplicative claim". The Appeals Court dropped the "duplicative claim" dismissal and decided

to dismiss for "frivolousness". This Court has decided to dismiss the amended complaint, in this case again, because Plaintiff is attempting to refile the complaint with all the flaws identified by the Circuit Court corrected.

This matter is now before this Court because under the "dismissal without prejudice" rule, the Plaintiff is allowed to amend the complaint and refile it. That's exactly what Plaintiff did in this case. This Court has taken that right away from Plaintiff by disguising the dismissal to look as if it is within the framework of the law. Therefore, the filing of the amended complaint was not to avoid, evade, or sidestep an order made in another case, it was simply to submit a complaint that includes enough factual allegations "sufficient to provide defendant with 'fair notice' of the claim and the basis for it." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff filed as new, or refile this case, in this Court on 12/17/2020; Case No. 6:20-cv-04353-BHH-KFM, because under the "dismissal without prejudice" rule, the Plaintiff is allowed to refile the complaint. The Magistrate Judge has taken that right away from Plaintiff by disguising the reason for returning Plaintiff's complaint and claim charts to look as if it is within the framework of Rule 8, "Under General Order In Re: Procedures in Civil Actions Filed by Prisoner Pro Se Litigants, No. 3:07-mc-5014-JFA (D.S.C. Sept. 18, 2007)... Rule 8 of the Federal Rules of Civil Procedure requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The voluminous complaint and exhibits submitted by the plaintiff, numbering more than 300 pages, do not comply with these requirements."

The Magistrate Judge reviewed the initial complaint (numbering 157 pages without exhibits) in this case; the Magistrate Judge reviewed the amended complaint (numbering 253 pages without exhibits) in this case; the District Judge reviewed the amended complaint

(numbering 253 pages without exhibits) in this case; the Circuit Court Judges reviewed the amended complaint (numbering 253 pages without exhibits) submitted on appeal in this case; and, not once did any of the Judges reject or dismiss this case (including the Magistrate Judge who is now rejecting the case) for violation of Rule 8 of the Federal Rules of Civil Procedure that only requires a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

This Court erred in its opinion that "Plaintiff is attempting to circumvent the order in this case". Plaintiff believes the Magistrate Judge has framed this case to be dismissed for "failure to include factual allegations beyond the identities of the defendants, reference to the CMDC device, and the alleged infringed-upon patents".

The Magistrate Judge dismissed Plaintiff's initial complaint in this case (numbering 157 pages of factual allegations without exhibits) for "failure to include factual allegations...", why should I believe he was not preparing to do the same when he ordered the case page limit to 35 pages that includes the 7 pages of Court documents for pleading? "Stop asking me to trust you while I'm still coughing up water from the last time you cause me to drown." – Unknown

In this matter, Plaintiff is only trying to satisfy the Supreme Court's requirement for pleadings that goes beyond Rule 8 "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted this Federal Rule of Civil Procedure 8(a) rule to require factual allegations sufficient to demonstrate that a claim is plausible on its face.

The Magistrate Judge in this case is denying Plaintiff the right to submit enough factual allegations so that this Court can reasonably infer from the facts that the defendants are liable for the alleged wrongdoing. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

This Court is denying Plaintiff's motion to amend the complaint, thereby eliminating Plaintiff's attempt at filing pleadings that contain enough factual information, and stripping Plaintiff's right away that allows Plaintiff to file an amended complaint after a claim has been "dismissed without prejudice".

Under Fed. R. Civ. P. 8(a), a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court has explained that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation..." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Therefore, in order to defeat a motion to dismiss, a complaint must allege facts which render its legal claims facially plausible. *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007). Facial plausibility is achieved when the district court can reasonably infer from the facts that the defendant is liable for the alleged wrongdoing. *Iqbal*, 129 S. Ct. at 1949.

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting Iqbal, 556 U.S. at 678).

## **CONFLICTING REQUIREMENTS MADE BY MAGISTRATE JUDGE KEVIN F. McDONALD**

Magistrate Judge McDonald initially recommended dismissal of Plaintiff's 300-page complaint, claim charts; DVDs, and response letters because "plaintiff has failed to include factual allegations beyond the identities of the defendants, reference to the CMDC device, and the alleged infringed-upon patents":

*Larry Golden v. Apple, Inc.*, et al; "as noted by this court previously, the plaintiff's patent infringement claims [in *Golden v. Apple, Inc.*, et al. Case No. 6:19-cv-02557-DCC] are subject to dismissal because the plaintiff has failed to include factual allegations beyond

the identities of the defendants, reference to the CMDC device, and the alleged infringed-upon patents (see generally doc. 1)." See Case No. 6:20-cv-02270-BHH-KFM; Filed 09/11/20; Entry Number 16; "REPORT OF MAGISTRATE JUDGE"; Page 8 of 12.

Pursuant to the "dismissal without prejudice" opinions of Magistrate Judge McDonald, "the undersigned recommends that the district court dismiss this action without prejudice and without issuance and service of process" *Golden v. Apple Inc. et al*, No. 6:19-cv-02557; District Judge Coggins, Jr., "this action is dismissed without prejudice and without issuance and service of process" *Golden v. Apple Inc. et al*, No. 6:19-cv-02557; Chief Judge Prost and Circuit Judges Linn and Taranto, "we affirm the district court's dismissal without prejudice and without service of process..." *Golden v. Apple Inc. et al*, No. 20-1508, Plaintiff, by right, filed on 01/04/2021 an amended complaint in Case No. 6:19-cv-02557-DCC, with the understanding "a judge can dismiss a claim with or without prejudice and that dismissal without prejudice is one where the plaintiff is allowed to amend the complaint or refile it". Plaintiff's new amended complaint include factual allegations beyond the identities of the defendants, reference to the CMDC device, and the alleged infringed-upon patents.

The Supreme Court has interpreted this Federal Rule of Civil Procedure 8(a) to require factual allegations sufficient to demonstrate that a claim is plausible on its face. Plaintiff's complaint includes sixteen (16) defendants; 6 counts; 6 asserted patents; 24 independent claims; 41 dependent claims; and 91 alleged infringing devices, products, or systems. The Plaintiff's complaint also includes claim charts that illustrates how each of the accused products meet each and every element of at least one claim of the asserted patent(s).

Claim charts have been required with IP court submissions since 1983 following the famous case: *Summagraphics Corporation v. U.S.* to help construct clear claim arguments.

Plaintiff's claim charts are basically a visualization of all of the information analyzed in a patent claim.

The purpose of Plaintiff's claim charts is to determine if any infringement has occurred. For infringement analysis & litigation, Plaintiff's claim charts are designed to help confirm that each and every limitation of the claim is present in a product, service, or standard. For validity analysis in litigation, Plaintiff's claim charts are designed to help confirm the novelty of a claim relative to prior art. Plaintiff's claim construction and claim interpretation charts included in this Complaint, shows patent specifications and/or technical literature citations with proper interpretations of the language of a claim.

Plaintiff complaint also includes two (2) DVD's as evidence of Plaintiff's conception of his inventive ideas and five (5) response letters from members of the Executive and Legislative branches of government as evidence of utility "usefulness" of the inventions.

Magistrate Judge McDonald now recommends dismissal of Plaintiff's complaint because "[t]he voluminous complaint and exhibits submitted by the plaintiff, numbering more than 300 pages, do not comply with the[se] requirements of Rule 8 of the Federal Rules of Civil Procedure... requires only that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Fed. R. Civ. P. 8(a).

> *Larry Golden v. Apple, Inc., et al*; Case No. 6:20-cv-04353-BHH-KFM; Filed 12/17/20;
> Entry Number 1; "ORDER"; Page 2 of 5 "Under General Order In Re: Procedures in
> Civil Actions Filed by Prisoner Pro Se Litigants, No. 3:07-mc-5014-JFA (D.S.C. Sept.
> 18, 2007), the undersigned is giving the plaintiff twenty-one (21) days from the date this
> order is entered (plus three days for mail time) to: 1) Provide a complaint in compliance
> with this Order. Rule 8 of the Federal Rules of Civil Procedure requires only that a
> complaint contain "a short and plain statement of the claim showing that the pleader is
> entitled to relief." Fed. R. Civ. P. 8(a). The voluminous complaint and exhibits submitted
> by the plaintiff, numbering more than 300 pages, do not comply with these requirements.
> As such, the plaintiff's complaint and exhibits are being returned so that the plaintiff can
> provide a complaint in compliance with this order... In light of the foregoing, the
> plaintiff is informed that the complaint submitted shall have a page limit of thirty-five

(35) pages (including the court's standard complaint form). If the plaintiff submits a complaint that does not comply with the requirements set forth in this order, the Clerk of Court will return it unfiled to the plaintiff by United States Mail. If the plaintiff does not provide a complaint that complies with this order, this case may be dismissed for failure to prosecute and failure to comply with an order of this Court under Rule 41 of the Federal Rules of Civil Procedure."

Pursuant to the order of Magistrate Judge Kevin McDonald in United States District Court for the District of South Carolina; filed 12/17/2020 as a new complaint; Case No. 6:20-cv-04353-BHH-KFM, Plaintiff is ordered to file "a short and plain statement of the claim showing that the pleader [Plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a).

Plaintiff filed on 01/05/2021 "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a), and attached a copy of the asserted patents as Exhibits A, B, C, D, E, & F. The attached patents satisfy the requirement of "enough factual allegations". For example, in *Incom Corp. v. Walt Disney Co.*, No. 2:15-cv-03011-PSG-MRW, Dkt. 39, at *4 (C.D. Cal. Feb. 4, 2016) the Central District of California declined to dismiss a complaint that attached the asserted patent, identified the accused products by name, and generally compared the technology disclosed in the patents to the accused products. The complaint did not identify any specific asserted claim, but the court found that: "Plaintiff has stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as Plaintiff's patented system.".

## GUIDE USED BY PLAINTIFF TO PREPARE COMPLAINTS

The Court is required to accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelasto v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

December 1, 2020 will mark the five-year anniversary of the Supreme Court's abrogation of Form 18—the model complaint that provided the minimum requirements for stating a claim of

direct infringement. Following the abrogation of Form 18, patent infringement claims must satisfy the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A Magistrate Judge in the Southern District of New York used a three-factor test to decide if a complaint for direct patent infringement survived a motion to dismiss. The Judge found that a complaint would survive a motion to dismiss if it "(1) attaches the asserted patents to the complaint, (2) specifically identifies the accused products and attaches photographs of them to the complaint, and (3) alleges that 'the accused products meet each and every element of at least one claim' of the asserted patents." *Araujo v. E. Mishan & Sons, Inc.*, No. 19-CV-5785 (GHW)(SN), 2020 WL 5371323, at *2 (S.D.N.Y. Aug. 7, 2020), report and recommendation adopted, No. 1:19-CV-5785-GHW, 2020 WL 5369888 (S.D.N.Y. Sept. 8, 2020) (internal quotations and citations omitted).

On the second point, naming the accused products, describing their structure, and providing Web addresses that show photographs of the accused products was also found to suffice. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d at 1334. The Judge recommended denying a motion to dismiss direct infringement allegations where the complaint included an element-by-element claim chart for one accused product—an exercise apparatus called the "Ab Rocket"—that provided a "detailed basis for [the] belief [that the accused product infringes claim 1] without merely reciting the elements of claim 1."

At the pleading stage, "Plaintiff is not required to plead 'direct infringement of each and every element of the allegedly infringed claim.'" (quoting *Crypto Res., LLC v. Assa Abloy, Inc.*, 236 F. Supp. 3d 671, 686 (E.D.N.Y. 2017)) As an example, although the complaint did not include as detailed an analysis for the other accused product—the "Ab Rocket Twister"—the

Judge did not fault the plaintiff because the complaint "adequately compares and contrasts the Ab Rocket and the Ab Rocket Twister."

Applying the Twombly/Iqbal standard, the District of Massachusetts decided an allegation of direct infringement of a patent to a semiconductor light-emitting device (LED) was plausible because the plaintiff "included allegations referencing each element of Claim 1 of the [Asserted] Patent, satisfying this threshold requirement." *Lexington Luminance LLC v. TCL Multimedia Tech. Holdings, Ltd.*, No. 16-cv-11458-DJC, 2017 WL 3795769, at *4 (D. Mass. Aug. 30, 2017). In reaching this decision, the Court noted the plaintiff "has alleged the patent claim that has been infringed, . . . [and] the infringed elements of that claim, . . . and identifies both the function of the infringed LEDs (television backlighting) in the Accused Products and the marketing of that function in the Accused Products' instruction manuals." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, the Court declined to demand specificity beyond an allegation "that Defendants' product contains all elements of one claim of the allegedly infringed patent."

In *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337 (Fed. Cir. 2018), the Federal Circuit expressly stated: "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met.'" Id. at 1350 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (emphasis added).

*John v Whole Foods Market Group Inc.*, 858 F.3d 732 (2d Cir. June 2, 2017) "The Second Circuit, however, ruled that it had repeatedly described that requirement as "a low threshold," which helps to ensure that the plaintiff has a personal stake in the outcome of the controversy. The Second Circuit found that at the pleading stage, the plaintiff need not prove the

accuracy of the DCA's findings or the rigor of its methodology; he need only generally allege

facts that, accepted as true, make his alleged injury plausible.  The Second Circuit opined that

although the plaintiff might ultimately be unable to show he was injured under the more

demanding standards applicable at summary judgment or trial, at that time the plaintiff had

plausibly alleged a nontrivial economic injury sufficient to support standing. The Second Circuit

thus ruled that the plaintiff's complaint satisfied the "low threshold" required to plead injury in

fact and, accordingly, vacated the district court's order."

How is it possible the Magistrate Judge, with all of his years of experience, manage to

overlook all the years of precedence that governs complaints, and how the complaints should be

construed? Plaintiff believes he has finally figured out what motivates the Magistrate Judge to

continue making bad decisions, "allege facts, taken as true". It's evident the Magistrate Judge

does not believe an African-American could ever invent what the Plaintiff has invented. There's

no other explanation for his racist behavior.

## **FLAWS IDENTIFIED BY THE CIRCUIT COURT**

The flaws that were identified by the United States Court of Appeal for the Federal

circuit of Plaintiff's amended complaint were corrected before Plaintiff submitted the corrected

complaint to this Court. The Magistrate Judge rejected the corrected amended complaint and

ordered the Clerks not to docket the complaint. An example of the correction is as follows:

Count I of Golden's Amended Complaint at ¶ 156, *Golden v. Apple Inc.*, No.
6:19-cv-02557 (D.S.C. Oct. 15, 2019), which states "at least one of the defendants named
in this complaint has infringed at least independent claim 4 & 5 of the '287 patent," has
been amended in this Complaint to read "Upon information and belief, defendants Apple
Inc. ("Apple"), Samsung Electronics, USA ("Samsung"), LG Electronics, USA, Inc.
("LG"), Qualcomm Inc. ("Qualcomm"), Motorola Solutions Inc. ("Motorola"), Panasonic
Corporation ("Panasonic"), AT&T Inc. ("AT&T"), Verizon Corporation Services Group
("Verizon"), Sprint Corporation ("Sprint"), T-Mobile USA, Inc. ("T-Mobile"), Ford

Global Technologies, LLC ("Ford"), Fairway Ford Lincoln of Greenville ("Fairway Ford"), General Motors Company ("GM"), Kevin Whitaker Chevrolet ("Whitaker Chevrolet"), FCA US LLC ("FCA"), and Big O Dodge Chrysler Jeep Ram ("Big O") has directly infringed or infringed under the doctrine of equivalents, at least independent claims 1, 4, or 5 of the '287 patent."

Similarly, Count II of Golden's Amended Complaint at ¶ 206; Count III of Golden's Amended Complaint at ¶ 256; Count IV of Golden's Amended Complaint at ¶ 306; Count V of Golden's Amended Complaint at ¶ 356; and, Count VI of Golden's Amended Complaint at ¶ 372, is amended to identify, by name, the defendants Plaintiff has alleged is infringing Plaintiff's patent under each count.

## EXHIBITS

The Magistrate Judge stated: "[t]he complaint also references "claim charts" for each defendant and each patent. E.g., id., ECF No. 16-14. These claim charts present a dizzying array of disorganized assertions over several hundred pages, disingenuously using the words of the claims to generally describe cryptically identified structures". Plaintiff included Exhibits A-E to illustrate just how disingenuously the Magistrate Judge words are in generally describing Plaintiff's "claim charts". Another demonstration of just how far the Magistrate Judge is willing to go to dismiss the pleadings of an African-America who is trying to have his day in Court.

**EXHIBIT A:**

Steve Jobs and Apple is credited with inventing the smartphone, when in fact Steve Jobs first patent for the smartphone was a design patent (how the device looks). Jobs filed a patent application for a rectangular design electronic device in January, 2007. Plaintiff filed a utility patent (how the device function) that included specifications for a rectangular device in April, 2006. Almost a year before Jobs. Exhibit A illustrates pictures of rectangular design smartphones from Apple, Samsung, and LG, Plaintiff is ready to submit into evidence. The exhibit also includes a comparison chart of Apple's 1st Patent electronic device and Plaintiff's CMDC device.

Apple's 1st Patent for the electronic device (i.e., smartphone) ornamental design: First

application filing date is January 5, 2007 (App. # D/270,887).

> Electronic Device: "The device (i.e., electronic device) which controls the flow of electrons is called electronic device. These devices are the main building blocks of electronic circuits. The various electronic devices are computers, mobile phones, etc."
> The broken lines depicted in FIGS. 1, 2, and 6 of the inner rectangle, at the center bottom of the electronic device, represent the bounds of the claimed design, while the broken lines inside the rectangle, shown only in FIG. 6, are directed to environment and are for illustrative purposes only; the broken lines from no part of the claimed design.

Plaintiff's Patents for the Detector Case (i.e., CMDC device) ornamental design: USPTO

Disclosure Document filed Nov. 17, 2004 (No. 565732); First application filing date is April 5,

2006 (App. # 11/397,118). CMDC Device:

> The [CMDC device] includes a power source (battery or electrical) … A cpu 40 is mounted within the [CMDC device] 12 and electrically interconnects, routes, and transmits signals among items hereinafter further described and also communicates.
> Fig. 1 is an illustrative drawing of the rectangle design of the [CMDC device]; and, Fig. 17 are illustrative drawings of the rectangle design of the cell phone (i.e., smartphone) and the cell phone detector case

**EXHIBIT B:**

The drawings taken from the 10,163,287 patent (Exhibit B) illustrates a "rectangle"

device that is a new and improved cell phone capable of detection and capable of being

interconnected with vehicles. To appreciate the true value of a quality patent illustration, it helps

to first think about the overall context of the patenting process, which is fairly expensive and

complex. There are two main objectives. First, the patent applicant has to differentiate the

invention from other existing, known inventions, which is referred to as prior art. The invention

has to be novel and non-obvious from this perspective. The second objective is to make sure the

patent applicant meets all the requirements of describing in a reasonable amount of detail how a

person of ordinary skill in that technological area will be able to make and use your invention.

Quality illustrations are an important component of detailed specifications, because they help

achieve both of these core objectives in one method. Illustrations have the power to distil or capture the essence of a complex idea in a very simple, clear, unambiguous manner.

**EXHIBIT C:**

The drawings that are Exhibit C, mirrors the type of numbered drawings used to illustrate a claimed invention in a patent application. A high-quality drawing allows the viewer to capture any difference, very quickly and clearly. It can also help the Plaintiff meet the support requirements in a simpler, more effective way. The patent office examiners thoroughly reviewed Plaintiff's patent specifications, and issued patent claims (i.e., independent and dependent claims) for each of the numbered items that describes Plaintiff's CMDC device and Defendants' alleged infringing (i.e., smartphone) device. Just by looking at the drawings illustrated as Exhibit C, one of skill in the art can immediately figure out what the invention is about.

**EXHIBIT D:**

The doctrine of equivalents is a legal rule in many of the world's patent systems that allows a court to hold a party liable for patent infringement even though the infringing device or process does not fall within the literal scope of a patent claim, but nevertheless is equivalent to the claimed invention. The purpose of the doctrine is to prevent an infringer from stealing the benefit of a patented invention by changing only minor or insubstantial details of the claimed invention while retaining the same functionality. In *Graver Tank & Mfg. Co. v. Linde Air Prods., Inc.* 339 U.S. 605 (1950), the U.S. Supreme Court held that a patentee may invoke this doctrine to proceed against the producer of a device if it performs substantially the same function in substantially the same way to obtain the same result.

Plaintiff's claim chart under Exhibit D is unique because it provides a dependent claim that stands on its own for each and every limitation of the independent claim 29 of the 9,589,439

patent, and each limitation of the alleged infringing product. Invalidity of Plaintiff's dependent claims (12, 18, 20, 22, 25, 28, 30, & 118 of the RE43,990 patent), like infringement of Plaintiff's dependent claims, must be analyzed on a per-claim basis; some of Plaintiff's patent claims could be invalid without rendering all claims invalid. In fact, Plaintiff's dependent claims of the RE43,990 patent asserted in the claim chart at Exhibit D, may still be valid, even if its underlying independent claim is invalid. For example, if each dependent claim has at least one additional limitation C, not found in the independent claim it depends on containing A+B, infringement requires doing all three, A+B+C. Therefore, the combination A+B+C in each dependent claim could still be novel (not anticipated in any prior art), even if A+B in the independent claim wasn't novel. Factors to be considered in determining whether Plaintiff have provided sufficient evidence of possession include the level of skill and knowledge he has demonstrated in the art.

Partial structure or functional characteristics alone or coupled with a known or disclosed correlation between structure and function is sufficient evidence. The method of making the claimed inventions from the disclosed subject matter is sufficient evidence. "Disclosure of any combination of such identifying characteristics that distinguish the claimed invention from other materials and would lead one of skill in the art to the conclusion that the applicant was in possession of the claimed species is sufficient. See *Eli Lilly*, 119 F.3d at 1568, 43 USPQ2d at 1406.

**EXHIBIT E:**

Apple, Samsung, LG, and Qualcomm developed their smartphone devices under Government contract beginning in year 2008. Plaintiff filed in this Court because in year 2018, the Court of Federal Claims issued an Opinion stating, the mobile (consumer) devices of Apple, Samsung, LG, and Qualcomm are the private property of those companies and any Government use is "purely incidental".

34

## **CONCLUSION**

Plaintiff is seeking leave to file motions (if necessary) to cure the following under FRCP Rule 60(b)(1): "newly discovered evidence", Plaintiff was able to obtain a DVD of the TV show Plaintiff did in year 2008 that illustrates Plaintiff's prototype CMDC device and witness involvement; 60(b)(3): "misconduct of an adverse party", Plaintiff believes the Magistrate Judge is a racist who lacks the ability to be impartial; 60(b)(4): "the judgement is void", as illustrated throughout this document the MJ's R&R is false and misleading; and, 60(b)(5): "the judgement has been satisfied", the District Court, and the Circuit Court both dismissed "without prejudice", which grants the Plaintiff the right to refile, or file as new, a corrected complaint.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Respectfully submitted,

S/ _Larry Golden_    Date: 02/11/2021

Larry Golden, Plaintiff, Pro Se
740 Woodruff Rd., #1102
Greenville, South Carolina 29607
(H) 864-288-5605 / (M) 864-992-7104
atpg-tech@charter.net